IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 2000 Session

## STATE OF TENNESSEE v. JOHNNIE BELL, JR.

**Appeal from the Criminal Court for Sullivan County**
**No. S41906      Phyllis H. Miller, Judge**

—————————————

**No. E1999-00819-CCA-R9-CD**
**November 27, 2000**

—————————————

The defendant, Johnnie Bell, Jr., challenges the trial court's order upholding the prosecutor's denial of pretrial diversion for the charges of vehicular homicide and aggravated assault. He contends that the prosecutor abused his discretion in failing to consider all the relevant factors and to list the factual disputes in the evidence. He argues that the trial court may not rehabilitate the prosecutor's letter and that this court must order pretrial diversion. We hold that the prosecutor failed to consider all the relevant factors but that the failure does not require the grant of pretrial diversion absent proof of entitlement. We affirm the trial court's order denying pretrial diversion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. DAVID H. WELLES, J., filed a concurring and dissenting opinion.

George Todd East, Kingsport, Tennessee, attorney for the appellant, Johnnie Bell, Jr.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and J. Lewis Combs, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Johnnie Bell, Jr., brings an interlocutory appeal, T.R.A.P. 9, from the order of the Sullivan County Criminal Court affirming the prosecutor's denial of his application for pretrial diversion for the charges of vehicular homicide, a Class C felony, and aggravated assault, a Class D felony. The defendant contends that the prosecutor abused his discretion by failing to consider all the factors relevant to diversion and to list the disputed facts. He challenges the trial court's determination that the prosecutor's conclusions are supported by substantial evidence in the record. He argues that the prosecutor's abuse of discretion required the trial court to grant pretrial diversion.

The charges arise from the defendant's tractor trailer striking the rear of Ms. Lois Bacon's minivan, which resulted in Ms. Bacon's death and injuries to her passenger, Ashley Bacon. The defendant requested pretrial diversion, and pursuant to the parties' stipulation, the trial court ordered the Tennessee Department of Correction (TDOC) to conduct a background investigation of the defendant. In a letter, the prosecutor denied the defendant's application for pretrial diversion for the following reasons:

1. The defendant takes no responsibility for his actions and blames the victim in this case. The defendant admits that the victim never entirely left her lane of travel. The defendant states on page 3 of the Pre-Trial Diversion Report that the "accident was unavoidable on his behalf" and that he "was not negligent in his actions." The lack of acceptance of responsibility on behalf of the defendant shows that he would be a poor candidate for rehabilitation.

2. The defendant admits to having two speeding tickets and one conviction for following too closely. There is evidence that the defendant was following too closely to the victim of this fatality. The defendant has violated the motor vehicle rules in the past but chose to drive dangerously again.

3. The defendant had no hesitation in acting recklessly and did endanger several motorists other than the victims. Other motorists were in danger of serious bodily injury. Diversion would depreciate the seriousness of these crimes.

4. The defendant has an unstable work history as a truck driver. He has been terminated twice and all of his jobs have been of short duration. The defendant would be a poor candidate to complete any probationary period.

5. The driver was driving a large semi-truck. The victim was driving a Dodge Caravan. The officer states that the victim was killed in part by the fact that the defendant was following too closely. The defendant should have reasonably known of his vehicles [sic] potential for deadly force. Fatalities by large trucks are a growing problem in our community and in our nation. Irresponsible driving of these vehicles must be deterred nationwide. Truck crashes increased from 383,000 in 1996 to 444,000 in 1997. In 1997 there were 717 fatalities of truck occupants compared with 4,638 fatalities of passenger-vehicle occupants involved in truck-car crashes. Although large trucks represent only 3% of all registered vehicles on the road, they were involved in over 25% of passenger vehicle occupant deaths in multiple vehicle crashes.

The actions of the defendant must be deterred.

The defendant petitioned the trial court for a writ of certiorari to review the prosecutor's denial of pretrial diversion. The state submitted a copy of the record upon which it based the denial of pretrial diversion, consisting of the TDOC's pretrial diversion report; a statement the defendant gave the police; a Tennessee Bureau of Investigation (TBI) laboratory report; materials by the Citizens for Reliable and Safe Highways (CRASH), which contain statistics on wrecks involving large trucks; and a transcript of the defendant's telephone conversation with a police officer regarding the accident.

In his statement to the police, the defendant said that on July 6, 1998, he was traveling north on Interstate 181 in the right lane when he saw a minivan enter the emergency lane as if to approach the exit ramp from that lane. He said that he noticed that cars were entering the interstate northbound and that two tractor trailers and a car were pulling alongside his tractor trailer. He said that the minivan reentered the right lane in front of him. He said that he drove as close to the center line as possible while braking but that he still hit the left rear of the minivan. He stated that he did not know what happened after that because his right front tire deflated, and he tried to maintain control of his truck. He parked his truck on the shoulder of the road.

In the pretrial diversion report, the defendant stated that the accident was unavoidable[1] on his part. He stated that no one felt worse than he about the victim's death but that he was not negligent. Kingsport Police Officer Jerry Mowell reported that the defendant was truthful and cooperative during the accident investigation. Officer Mowell said that the defendant showed extreme remorse for the accident. He said that although he would leave the matter of pretrial diversion to the district attorney's office, if anyone deserved pretrial diversion, the defendant did. In a recorded telephone conversation, Officer Mowell asked the defendant about the victim's entry into the emergency lane. The defendant stated that the minivan's left tires reached the solid white line, but he agreed that the minivan never crossed it.

According to the diversion report, the thirty-four-year-old defendant graduated from high school and served seven years in the army before receiving an honorable discharge. After leaving the army, the defendant completed truck driving school in Clarksville, Alabama, and then drove trucks for different employers. He worked for J.B. Hunt Transport for a year and three months and then for M.S. Carriers for three years, leaving both positions to take another job. He next worked as a truck driver for Watkins Motor Lines but was discharged after nine months. He worked as a truck driver for Overland Transport for a year and four months before leaving to take another job. He then worked as a truck driver for Active Transportation for two years and ten months before he was fired as a result of the present offenses. At the time he was interviewed, the defendant worked as a releasing agent for Auto Rail Services, and a representative of the company characterized him as a good employee.

---

[1]The report actually states that the defendant said that the accident was "avoidable," but the context of the statement reveals this to be a misprint.

-3-

The pretrial diversion report also reveals that the defendant paid a fine following a conviction for defective equipment in 1994. Additionally, the defendant reported incurring two speeding tickets in Ohio and having a following-too-closely offense in Louisiana. The defendant had been married for thirteen years and had three children. He reported that he was in good physical health but had back problems. He said that he was in excellent mental health and had used alcohol once but did not like the taste. He reported no other drug use. The laboratory report reveals that the defendant had not used drugs on the day of the offenses.

The trial court found that substantial evidence in the record supported the prosecutor's reasons for denying pretrial diversion. The court found that the defendant's statement to the police revealed that he blamed the victim for the accident, despite his telephone admission to Officer Mowell that the victim never fully left his lane of travel. The court found that the defendant had two tickets for speeding, one ticket for following too closely, and one conviction for defective equipment. It found that the three moving traffic violations were significant in this case because the defendant allegedly operated his tractor trailer recklessly on the interstate and the facts suggested that he may have been following too closely. The court found that the defendant's description of the accident revealed that several other motorists were in the area and that the defendant's actions endangered these motorists. The court noted that if the defendant was convicted, it could enhance his sentence with Tenn. Code Ann. § 40-35-114(10), lack of hesitation in committing a crime when the risk to human life is high, and (16), commission of the crime under circumstances creating great potential for bodily injury to a victim. It held that granting the defendant pretrial diversion when at least two enhancement factors would apply to his sentence would depreciate the seriousness of the offenses. The court declined to find that the defendant had an excellent work history because he had been fired from two jobs and his other jobs were of short duration. Finally, it found that the materials relied upon by the state provided substantial evidence of the need to deter truck drivers from reckless driving.

The trial court expressed concern about the prosecutor's failure to list and evaluate evidence favorable to the defendant such as his honorable discharge from the army, his stable marriage of thirteen years, his high school diploma, and his lack of a history of drug or alcohol abuse. Nevertheless, it recognized that Tenn. Code Ann. § 40-15-105(b)(3) provides that it may order pretrial diversion if the prosecutor abused his or her discretion. Thus, it determined that it was not required to order pretrial diversion for the prosecutor's failure to list and evaluate evidence that did not outweigh the unfavorable factors listed and supported by the evidence. Noting the defendant's experience and training as a tractor trailer driver, the court found that the defendant should have anticipated that the cars merging onto the interstate would force the victim to stay in his lane and should have slowed his truck to maintain a safe distance behind the victim. Due to the defendant's egregious behavior under the circumstances, the court found that to order pretrial diversion would depreciate the seriousness of the offenses and would undermine the judicial system.

The decision to grant or deny an application for pretrial diversion is within the discretion of the prosecuting attorney. Tenn. Code Ann. § 40-15-105; State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). In making this determination, the prosecutor should

-4-

focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

Curry, 988 S.W.2d at 157 (quoting State v. Pinkham, 955 S.W.2d 956, 959-60 (Tenn. 1997) and State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983)). The prosecutor's response must be in writing, must list the evidence considered, and must point out any factual discrepancies between the evidence upon which the prosecutor relied and that presented in the defendant's application. Curry, 988 S.W.2d at 157. The response must discuss the factors considered by the prosecutor and the weight given to each factor. Id. "That a defendant, obviously, bears the burden of demonstrating suitability for diversion does not relieve the prosecutor's obligation to examine all of the relevant factors and to set forth the required findings." Id.

The decision of the prosecutor to grant or deny pretrial diversion is presumptively correct and will not be set aside absent an abuse of discretion. Id. at 158; Hammersley, 650 S.W.2d at 356. In reviewing the prosecutor's denial of pretrial diversion, the trial court may consider only that evidence considered by the prosecutor. Curry, 988 S.W.2d at 158. In order to find an abuse of discretion, the trial court must find that the record lacks substantial evidence supporting the prosecutor's determination. Id.

This court has stated that on appeal, the trial court's factual determinations will be overturned only if the evidence preponderates against them. State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993); State v. Helms, 720 S.W.2d 474, 476 (Tenn. Crim. App. 1986). In Curry, our supreme court applied the preponderance of the evidence standard for review of the trial court's decision regarding the prosecutor's abuse of discretion, rather than limiting this standard to the trial court's factual findings. Curry, 988 S.W.2d at 158 (citing Pinkham, 955 S.W.2d at 960). Respectfully, the trial court's determination that the prosecutor has or has not abused his or her discretion is a legal conclusion, not binding upon the appellate court. Carr, 861 S.W.2d at 856; see, e.g., Hammersley, 650 S.W.2d at 356 (holding that the record must be devoid of any substantial evidence to support the denial of pretrial diversion for a reviewing court to find an abuse of discretion and applying this standard to hold that the prosecutor's denial of diversion based solely upon deterrence was an abuse of discretion). When the facts are undisputed, the underlying issue that this court must determine on appeal remains whether, as a matter of law, the prosecutor abused his or her discretion in denying pretrial diversion. Carr, 861 S.W.2d at 856; State v. Brooks, 943 S.W.2d 411, 413 (Tenn. Crim. App. 1997); State v. Lutry, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996); State v. Morgan, 934 S.W.2d 77, 82 (Tenn. Crim. App. 1996); see State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995) (limiting the appellate court's role to determining whether any substantial evidence supports the prosecutor's denial of pretrial diversion in light of the relevant factors); State v. Helms,

720 S.W.2d 474, 476 (Tenn. Crim. App. 1986) (reversing the trial court's finding of abuse of discretion because the facts were undisputed and substantial evidence in the record supported the prosecutor's denial of pretrial diversion).

The defendant contends that the prosecutor abused his discretion in denying the application for pretrial diversion because the prosecutor failed to consider all of the relevant factors. He claims that the five reasons listed in the denial letter relate to the seriousness of the offense and the need for deterrence. Specifically, he argues that the prosecutor did not consider the circumstances of the offense, his lack of a prior criminal record, his social history, or his physical and mental condition at the time of the offenses. He also contends that the prosecutor failed to identify the factual disputes between the evidence upon which the prosecutor relied and the defendant's application.

The state contends that the prosecutor did consider the allegedly omitted factors but that he merely came to a different conclusion than the defendant regarding their weight. It argues that the prosecutor considered the circumstances of the offense when stating that the defendant was driving a tractor trailer, the victim was driving a Dodge Caravan, and the officer stated that the victim's death was caused in part by the defendant following too closely. It claims that the prosecutor considered the defendant's prior criminal record by noting his conviction for following too closely and his two speeding tickets. It argues that the prosecutor considered the defendant's work history and found it to be unstable. The state also contends that no factual disputes are apparent from the record. However, it does not explain the prosecutor's failure to address the defendant's relevant social history and physical and mental condition.

The defendant bears the burden of providing the prosecutor "with sufficient background information and data to enable that officer to make a reasoned decision to grant or deny the relief sought." State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989). The applicant should provide the prosecutor with evidence relating to the relevant factors and may include affidavits and character letters. State v. Winsett, 882 S.W.2d 806, 810 (Tenn. 1993). The parties may supplement this information with a pretrial investigative report, but this report does not detract from the defendant's responsibility to show that he is a suitable candidate for diversion. Herron, 767 S.W.2d at 156. In filing the petition for a writ of certiorari, the defendant should include the record as it stands at that point, including the completed application for pretrial diversion. Winsett, 882 S.W.2d at 810. We note that the record before us does not contain an application for diversion. Nevertheless, the pretrial diversion report provides evidence of the defendant's graduation from high school, thirteen-year marriage, work history, criminal record, and lack of a drug or alcohol problem.

"If the attorney general bases his decision on less than the full complement of factors [listed in Hammersley,] he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration." Herron, 767 S.W.2d at 156. Furthermore, the prosecutor is required to identify any disputed facts. Curry, 988 S.W.2d at 157; Winsett, 882 S.W.2d at 810. In this case, the defendant correctly notes that the denial letter does not specify that the prosecutor considered any of the defendant's favorable qualities. Even if the prosecutor interpreted these qualities to be unfavorable for the defendant, he was required to state them as evidence relevant to

the circumstances of the offense, the defendant's social history, or the defendant's physical or mental condition and then to state why the factors upon which he relied outweighed these factors. See Curry, 988 S.W.2d at 158-59. Thus, the prosecutor abused his discretion in failing to consider all the relevant factors listed by our supreme court in Hammersley and restated in Curry.

The defendant contends that because the prosecutor has abused his discretion, this court must reverse the trial court and order pretrial diversion. He argues that the trial court acknowledged that the prosecutor failed to list and consider evidence favorable to the defendant, but it essentially attempted to rehabilitate the denial letter by relating some favorable evidence and finding it to be outweighed by the unfavorable evidence. The state contends that the trial court was not required to order pretrial diversion even if the prosecutor did not list all of the factors in the denial letter because the trial court's review of all the factors revealed that pretrial diversion was not appropriate.

In Curry, our supreme court held that the prosecutor's failure to enumerate and consider all of the relevant factors constituted an abuse of discretion, and it reinstated the trial court's grant of pretrial diversion. Curry, 988 S.W.2d at 159-60. Justice Holder, dissenting, warned that the majority's holding would allow defendants to avoid prosecution based solely upon the procedural omissions of the prosecutor:

> I question whether the legislature intended that a criminal committing a series of serious, sustained, planned, and deceptive crimes over a two-year period of time automatically be granted diversion merely because a district attorney failed to employ a preferred term in the letter denying diversion. The majority's holding could effectively allow defendants committing serious offenses . . . to avoid prosecution merely because a district attorney commits a non-prejudicial omission affecting neither a constitutional nor a statutory right.

Id. at 163. In this case, the defendant argues that the prosecutor's abuse of discretion requires an order granting pretrial diversion. However, we note that in response to Justice Holder's dissent, the majority opinion in Curry reviewed and approved the merits of the defendant's request for diversion. Id. at 159. This indicates that the defendant must show entitlement to diversion even if an abuse of discretion exists.

Also, we do not believe that Tenn. Code Ann. § 40-15-105 or prior Tennessee decisions support the defendant's argument. Section 40-15-105(b)(3) provides in pertinent part: "If the trial court finds that the prosecuting attorney has committed an abuse of discretion in failing to divert, the trial court may order the prosecuting attorney to place the defendant in a diversion status on such terms and conditions as the trial court may order." (Emphasis added). In interpreting a statute, our role is to give effect to the legislature's intent when enacting the statute. Owens v. State, 908 S.W.2d 923, 926 (Tenn. 1995). When a statute is unambiguous, the court should enforce the statute as written, without resorting to auxiliary rules of construction. Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). "Unambiguous statutes must be construed to mean what they say." Robertson v. University of Tennessee, 912 S.W.2d 746, 747 (Tenn. 1995) (citation omitted). The plain

meaning of the term "may" necessarily implies discretion. The use of "may" in § 40-15-105(b)(3) reveals that the trial court is not required to order pretrial diversion upon finding that the prosecutor has abused his or her discretion.

The legislature has vested the authority to prosecute a case or to divert it with the prosecutor rather than the court. Carr, 861 S.W.2d at 858; see Tenn. Code Ann. § 40-15-105. The trial court may not merely substitute its own judgment for that of the prosecutor but, instead, must "defer to the prosecutor's discretion when the record contains any substantial evidence to support the decision." Id. In reviewing the prosecutor's denial of diversion, the trial court must look at all the relevant factors to determine whether the prosecutor considered them, and if he or she did not, to determine whether pretrial diversion is appropriate. Herron, 767 S.W.2d at 156; Carr, 861 S.W.2d at 858. Essentially, Herron provides that in reviewing whether the prosecutor has abused his or her discretion regarding whether diversion should be granted, the trial court must undertake the same process required of the prosecutor in considering and weighing the relevant factors. In this respect, the trial court may consider only the record that was before the prosecutor. See Curry, 988 S.W.2d at 157 (holding that in reviewing the denial of diversion, the trial court is limited to the evidence considered by the prosecutor). Because the trial court is limited to the record considered by the prosecutor, the trial court will not surprise the defendant by basing its determination upon new reasons not in the record. In turn, this court will defer to the trial court's determination unless it is not supported by substantial evidence in the record.

To the extent that this procedure gives some measure of discretion over the decision of whether to divert to the trial court, it is the legislature that gave the trial court that discretion by employing the term "may" in section 40-15-105(b)(3) as discussed above. Furthermore, the grant of discretion to the trial court is wholly appropriate:

> Diversion may not be regarded as a mere extension of the charging process. It does not come into play until after the indictment. The plan of diversion, or the denial thereof, follows indictment and comes after the prosecutor has fully discharged all discretionary functions and after the prosecutorial die has been cast. Once committed to prosecution, the case is before the court for disposition. The process, at this stage, becomes fundamentally judicial and must end in a verdict, a nolle [prosequi] or pretrial diversion.
> . . . . [T]he jurisdiction of the court has been invoked by indictment and disposition becomes a judicial responsibility.

Pace v. State, 566 S.W.2d 861, 870 (Tenn. 1978) (Henry, C.J., concurring) (footnote omitted). Finally, the alternative–the automatic grant of pretrial diversion upon a finding that the prosecutor has abused his or her discretion–could result in the award of pretrial diversion for a wholly undeserving, yet "eligible," applicant. Curry, 988 S.W.2d at 163 (Holder, J., dissenting) (warning that an automatic grant of pretrial diversion based upon a procedural error by the prosecutor could result in diversion for "defendants committing serious offenses such as manslaughter, kidnapping, and vehicular homicide"). Such a reflexive award of pretrial diversion belies the fact that pretrial

diversion is a legislative largess granted only to those who can show their entitlement. Cf. Curry, 988 S.W.2d at 158 (holding that the "facts and circumstances of nearly all criminal offenses are by definition serious; only by analyzing all of the relevant factors, including those favorable to the defendant, can appropriate candidates for this legislative largess be identified in a manner consistent with the purpose of the pretrial diversion act").

In the present case, although it erroneously found that the prosecutor had not abused his discretion, the trial court undertook this weighing process. It reviewed the five reasons given by the prosecutor and found them to be supported by substantial evidence in the record. The prosecutor's first basis denying pretrial diversion is the defendant's failure to take responsibility for his actions and his blame of the victim, which show him to be a poor candidate for rehabilitation. The trial court found that despite his admitting that the victim never fully left his lane of travel, the defendant told the police that the accident was unavoidable and that he was not negligent. The trial court found that these statements revealed that the defendant blamed the victim for the accident. The trial court also found that the defendant was not completely truthful in his statement because he implied that the victim traveled completely in the emergency lane for a distance and then reentered the right lane in front of him. The trial court found the defendant's lack of candor to be probative of his potential for rehabilitation.

The defendant contends that the evidence does not support the prosecutor's basis for denial because the facts relating to how the accident occurred continue to be greatly disputed and are the subject of a tort suit in federal court. Furthermore, he argues that Officer Mowell stated in the pretrial diversion report that the defendant was truthful and cooperative during the investigation and showed extreme remorse for what happened. A prosecutor may not deny diversion based purely upon a defendant's failure to admit guilt. State v. James M. Lane, No. E1999-00615-CCA-R9-CD, Hamilton County, slip op. at 8 (Tenn. Crim. App. June 1, 2000). On the other hand, if the failure to admit the offense reveals a lack of candor or remorse, such could be a proper basis for denying pretrial diversion. Id.; see State v. Nease, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1989) (holding the defendant to be a poor candidate for diversion because he was not completely truthful about what occurred and did not accept full responsibility). In this case, the trial court found that the defendant's statement implied that the victim pulled completely into the emergency lane, traveled in the emergency lane for some distance, and then reentered the right lane in front of him. It determined that this implication contradicted the defendant's telephone admission to Officer Mowell that the victim never completely left his lane of travel. We agree that substantial evidence in the record supports the denial of diversion based upon the defendant's failure to take responsibility for his actions based upon his lack of candor regarding the manner in which the accident occurred.

The prosecutor also denied pretrial diversion based upon the defendant's continuing to drive dangerously despite previously incurring two speeding tickets and a conviction for following too closely. The trial court found that the diversion report revealed that the defendant had two speeding tickets, one ticket for following too closely, and one conviction for defective equipment. The trial court observed that although such traffic offenses normally carry little significance, the defendant's three moving traffic violations take on greater importance in this case in which the defendant

-9-

allegedly operated a tractor trailer recklessly and the evidence suggests that the defendant may have been following too closely at the time. The defendant contends that any weight attributed to his traffic citations is wholly misplaced. He argues that these citations became known solely through his own disclosure and that the record contains no evidence regarding their disposition or surrounding circumstances.

The prosecutor may properly consider evidence of criminal behavior to deny diversion. See State v. Beverly, 894 S.W.2d 292, 293 (Tenn. Crim. App. 1994) (noting that the trial court's discretion regarding judicial diversion is subject to the same constraints as that of prosecutors' discretion regarding pretrial diversion and affirming the trial court's denial of judicial diversion based upon the defendant's prior criminal behavior of marijuana use); see, e.g., State v. Michael Durand Holmes, No. 03C01-9707-CR-00243, Hamblen County, slip op. at 9 (Tenn. Crim. App. July 7, 1998), app. denied (Tenn. Feb. 16, 1999) (affirming the denial of pretrial diversion based upon the defendant's experience and reputation as a drug dealer, his prior criminal behavior, and his modest criminal record). The pretrial diversion report reveals that the defendant had a conviction for defective equipment, resulting in a $67.50 fine. The report also reveals that the "defendant stated that he has two (2) speeding ticket[s] in Ohio and a following too close[ly] offense in Louisiana." Although the defendant appears to question whether these incidents actually resulted in convictions, he admitted in the report that these moving violations occurred. These violations constituted relevant criminal behavior that the prosecutor properly considered as a basis for denying diversion.

The defendant also challenges the prosecutor's fourth basis for denial, which relates to his work history. The prosecutor concluded that the defendant's unstable work history revealed that he would be unlikely to complete a probationary period. In reviewing this reason, the trial court found:

> According to the pretrial diversion report, the Defendant has worked for six different companies since April 1989. He worked approximately three years each on two of those six jobs; he worked only about a year on the other four. He was terminated from two of the jobs, once because of the incident involved in the present case.

The trial court declined to find that the defendant had an "excellent work history" because he had been fired from two jobs and his other jobs were of short duration. It determined that the record contained substantial evidence to support the prosecutor's contention that the defendant had an unstable work history.

The defendant argues that the record does not support the conclusion that his work history is unstable. He contends that the record shows that he has been employed from 1989, when he was honorably discharged from the army, until he was terminated as a result of these offenses. He maintains that he changed jobs for increased wages and better hours, allowing him to spend more time with his family. He acknowledges that the record reflects that he was discharged from two jobs. He contends that one discharge resulted from the present accident and the other came about when the job ceased to exist. Neither party presented evidence at the certiorari hearing. The defendant's

attorney argued that the defendant changed jobs to gain better pay and more time with his family. The trial court noted: "It is not in here why you left those jobs that I could find, why you said that you . . . changed jobs so often. I don't believe that's in any materials that the State considered."

Although the evidence does not preponderate against the trial court's finding that the defendant's work history was not excellent, we do not believe that substantial evidence in the record supports the prosecutor's determination that the defendant's work history was unstable. The record reflects that the defendant was continuously employed from the time he graduated from high school. While in the army, he received an achievement medal, a commendation medal, and an air assault badge. The defendant reported that he was "discharged" from Watkins Motor Lines in April 1994 and that he began driving a truck for Overland Transport that same month. The record does not reflect the reason for his discharge. The record reveals that Active Transport fired the defendant on July 6, 1998, because of the present offenses and that the defendant started work as a releasing agent for Auto Rail Services on December 1, 1998, earning just over nineteen dollars an hour. A representative of Auto Rail Services characterized the defendant as a good employee.

The trial court noted that the prosecutor failed to list and evaluate evidence favorable to the defendant such as his honorable discharge from the army, his stable marriage of thirteen years, his high school diploma, and his lack of a history of drug or alcohol abuse. This evidence relates to the defendant's social history and his physical and mental condition, and it reflects favorably upon his amenability to correction. The trial court considered this evidence and found it to be commendable but not significant enough to outweigh the unfavorable evidence relied upon by the prosecutor to deny diversion. The trial court placed great weight on the seriousness of the crimes with which the defendant was charged, the fact that the defendant had previously operated a tractor trailer in violation of the law, and the fact that his actions endangered others in addition to the victims. The trial court emphasized its conclusion that the defendant, a trained and experienced tractor trailer driver, should have anticipated that the cars merging onto the interstate would force the victim to remain in his lane and should have slowed his truck to maintain a safe distance behind the victim. Based upon this evidence and the reasons listed by the prosecutor, the court refused to order pretrial diversion to avoid depreciating the seriousness of the offenses, emphasizing the need to deter tractor trailer drivers from dangerous driving. It concluded that pretrial diversion would not serve the ends of justice nor be in the best interest of the public and the defendant.

We review the trial court's weighing of the favorable evidence and ultimate denial of diversion to determine whether substantial evidence in the record supports the trial court's determination. The record reflects that the defendant had completed truck driving school and had driven trucks for nine years at the time of the offenses. The circumstances of the collision indicate that the defendant could have avoided the accident. In his statement, the defendant said that he noticed cars merging onto the interstate. In his telephone conversation with Officer Mowell, the defendant agreed that the victim never completely left his lane of travel. Also, the defendant stated that other motorists were traveling in the left lane and entering the interstate. Thus, the record reflects that the defendant's actions endangered others in addition to the victims.

Finally, the defendant admitted to three prior moving violations, including a previous instance of following too closely. The defendant lives in Kentucky and is a tractor-trailer driver. His violations occurred in Ohio and Louisiana, ostensibly while he was on the job. Essentially, the trial court believed that the defendant had a disregard for the rules of the road while driving a tractor trailer, which increased the risk of harm to others above that present for other motor vehicles and culminated in the death and injuries in the present case.

With the trial court's view of the defendant's lack of candor and failure to appreciate the risks of harm that his traffic violations posed when driving a tractor trailer, it was justified in seriously questioning the defendant's amenability to rehabilitating his conduct in similar situations. Likewise, under the circumstances in this case and given the defendant's background, the record supports the trial court's conclusion that granting diversion would depreciate the seriousness of the offenses for the defendant. We hold that substantial evidence in the record supports the trial court's denial of pretrial diversion.

Although the prosecutor improperly failed to consider all the relevant factors and to list the evidence favorable to the defendant, substantial evidence supports the trial court's conclusion that pretrial diversion is not warranted in this case. In support of the foregoing and the record as a whole, we affirm the trial court's order denying the defendant pretrial diversion.

_____
JOSEPH M. TIPTON, JUDGE