## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT JACKSON

### JANUARY SESSION, 2000

|  |  |  |
|---|---|---|
| STATE OF TENNESSEE, | * | |
| Appellee, | * * | No. W1999-00990-CCA-R3-CD |
| vs. | * * | SHELBY COUNTY |
| WAKEFIELD DAVIS, | * * | Hon. Bernie Weinman, Judge |
| Appellant. | * * | ( Robbery) |
|  | * | |

**FILED**

February 17, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

For the Appellant:

**Tony N. Brayton**
Asst. Public Defender
201 Poplar, Suite 2-01
Memphis, TN 38103


**AC Wharton, Jr.**
District Public Defender

For the Appellee:

**Paul G. Summers**
Attorney General and Reporter

**Tara B. Hinkle**
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
2d Floor, Cordell Hull Building
Nashville, TN 37243-0493


**William L. Gibbons**
District Attorney General

**John Campbell**
Asst. District Attorney General
201 Poplar Avenue - 3rd Floor
Memphis, TN 38103

OPINION FILED: _____

AFFIRMED


**David G. Hayes,** Judge

## OPINION

The appellant, Wakefield Davis, was charged by criminal information with robbery, a class C felony.  On March 12, 1999, he waived his right to indictment and pled guilty to the offense as charged.  Following the sentencing hearing, the trial court imposed a three year suspended sentence and placed the appellant on probation for four years.  The appellant's request for judicial diversion was denied.  The appellant appeals from this judgment contending as error his denial of diversion.

We affirm the judgment of the lower court.

## Background

The stipulated facts presented by the State at the guilty plea hearing reveal that, on December 7, 1998, the appellant entered the Lock and Key Storage located at 1045 Jefferson in Memphis.  He "pulled what appeared to be a pistol [on Frieda Faulkner], and took some money."  "He was later apprehended with the money and apparently also had a toy gun that he claimed was the gun he had at the robbery."

Prior to the presentation of proof at the sentencing hearing, defense counsel asked the court to consider judicial diversion.  In establishing the appellant's eligibility for diversion, counsel stated that, although the appellant had a 1990 Shelby County arrest, no final disposition of the charged offenses could be located.  Moreover, counsel presented the testimony of Rick Brown and Jennifer Sewell, records custodians of the Shelby County General Sessions Court and Criminal Court respectively, who both testified that they were unable to locate any record of any disposition of the charged offenses.   Additionally, Velma Stribling testified that she located records showing an arrest of the appellant on December 14, 1990, for possession of cocaine with the intent to sell; possession of marijuana with intent to sell; and possession of drug paraphernalia.  Despite evidence of the arrest, Ms. Stribling was also unable to locate any record disposing of the case.   On cross-examination, she admitted that these arrests "could be active cases that had just

2

never been disposed . . . ."

In his own behalf, the appellant, a forty-two year old high school graduate, testified that he had served six years in the United Stated Navy, was previously employed as an aircraft mechanic, and was a merchant marine for eight years. At the time of the offense charged, the appellant was employed "at a temporary service." He told the court that his drug abuse began three years prior to this offense. The appellant further admitted that he was arrested in 1990 on a drug charge. He explained that, at the time of his arrest, he was doing telemarketing work out of his employer's home. While he was at his employer's residence, a warrant was served and everyone in the home, including the appellant, was arrested. When he appeared in court on the charges, "[he] was released." He stated that the judge had informed him that he "was no longer involved in the case" because his employer had admitted to owning and possessing the drugs. The appellant denied that he was involved in any illegal drug use at this time. Contrary to this explanation, the State introduced the arrest report which indicated that, at the time the warrant was served, the police discovered everyone in the residence "sitting around smoking crack."

Regarding the present offense, the appellant admitted the facts offered by the State. Although he conceded that he "should accept full responsibility for [his] actions," he testified that, at the time of the offense, he was under the influence of cocaine and that he only committed the offense in order to support his habit. Indeed, he admitted that he was spending eighty to one hundred dollars a day on drugs; smoking three to four pieces of crack cocaine a day. The trial court later elicited testimony that, at the time of the offense, the appellant was only earning fifty-five dollars per day. Acknowledging the discrepancy between what he was earning and what he was spending on illegal drugs, he explained that "sometimes [he] would collaborate with other individuals. . . . [Y]ou manage to make deals." The appellant stated that he had been incarcerated since the date of his arrest and since that time he has "subscribed to several ministries," including the Radio Bible Church; the Robert Haygood Ministry and the Copeland Ministry. Additionally, in recognition of his drug addiction, the appellant stated that he had contacted several rehabili-tation organizations for placement should he be released. Specifically, the appellant

testified that he had been accepted in an inpatient program by the Calvary Colony Members Union Mission. In petitioning the court for a grant of judicial diversion, the appellant stated that he was a changed person and that diversion was necessary to further his professional career in the real estate business.

Arthur Davis, the appellant's second cousin, testified that he was a self-employed real estate broker. He stated that the appellant had expressed an interest in the real estate business and Mr. Davis had agreed to sponsor the appellant. He explained that a felony conviction would hinder the appellant's pursuit of his real estate license. Mr. Davis also informed the court that the appellant would have the support of his family in any rehabilitative efforts.

In denying judicial diversion, the trial court recited the following findings:

. . . [F]irst, we have an offense that is a horrible, horrible set of circumstances. Somebody goes in with what appeared to be a gun and threatens somebody. So certainly the information gave you an opportunity to plead to something that the law says now could well be a much more aggravated felony, and you would be eligible for no-release category, just about.

But regardless . . . you were allowed to do this , but we have someone here that, under a horrible set of circumstances, felt, at least, that their life was being threatened so you could get funds to . . . get more money to buy drugs . . . .

And so the serious crime - - and then we have someone . . .[n]ot . . . a person trying to feed a family . . . but a person who wanted to feed a habit.

. . . And we have someone here, . . .[who] as a mature adult, began his drug addiction; not a child . . .or a youngster who was led into something like this, but an adult who made . . . a decision that this is the course of action they would take and had to know . . .that this had got to be a consequence of this kind of conduct.

I think, taking all that into consideration, the Court is of the opinion that diversion would be inappropriate in this case. . . .

**Analysis**

"Judicial diversion is [a] legislative largess whereby a defendant adjudicated guilty may, upon successful completion of a diversion program, receive an expungement from all 'official records' any recordation relating to 'arrest, indictment or information, trial, finding of guilty, and dismissal and discharge' pursuant to the diversion statute." State v. Schindler, 986 S.W.2d 209, 211 (Tenn. 1999). The

effect of discharge and dismissal under the diversion statute "is to restore the person . . . to the status the person occupied before such arrest or indictment or information." Id. (citing Tenn. Code Ann. § 40-35-313(b) (1997)).

A criminal defendant is eligible for judicial diversion only if he has been convicted of a misdemeanor or a class C, D, or E felony and he must not have been previously convicted of a felony or a Class A misdemeanor. See Tenn. Code Ann. § 40-35-313(a)(1)(A). However, eligibility under the diversion statute does not ensure the grant of diversion. Indeed, the decision of whether to place an appellant on judicial diversion is within the sound discretion of the trial court. See State v. Harris, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996). Thus, upon review by an appellate court, if "any substantial evidence [exists in the record] to support the refusal," the decision of the trial court will be upheld and this court will not revisit the issue. See State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983).

In making the determination of whether to grant judicial diversion, the trial court must consider the following factors:
> (a) the accused's amenability to correction
> (b) the circumstances of the offense
> (c) the accused's criminal record
> (d) the accused's social history
> (e) the status of the accused's physical and mental health
> (f) the deterrence value to the accused as well as others.

State v. Lewis, 978 S.W.2d 558, 566 (Tenn. Crim. App. 1997), perm. to appeal denied, (Tenn. 1998) (citing State v. Bonestel, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993)). The trial court should also consider whether judicial diversion will serve the ends of justice- - the interests of the public as well as the accused. Id. Additional factors which may be considered include the appellant's attitude, his behavior since his arrest, his home environment, current drug usage, emotional stability, past employment, general reputation, family responsibilities, and the attitude of law enforcement. Id. (citing State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)).

The appellant contends that the trial court erred by denying his request for judicial diversion. Specifically, he contends that the trial court "failed to articulate how those factors which served as the basis for . . .it's denial of judicial diversion

5

outweighed other favorable factors for granting judicial diversion." Additionally, he contends that the trial court placed too much weight on the circumstances of the offense and failed to consider such favorable factors as (1) the appellant's work history; (2) responsibility for his actions; (3) efforts at rehabilitation; and (4) family support.

In its articulated findings denying diversion, the trial court relied upon the circumstances of the offense and the appellant's drug use. The trial court failed to articulate its consideration of all relevant factors. Specifically, the trial court failed to explain why its reliance upon the circumstances of the offense and the appellant's drug use outweighed all other factors. See Bonestel, 871 S.W.2d at 168. Notwithstanding this omission, the question remains whether the trial court reached the correct result. See, e.g., State v. Kenneth B. Johnson, No. 02C01-9612-CR-00476 (Tenn. Crim. App. at Jackson, Feb. 12, 1998), perm. to appeal denied, (Tenn. Nov. 2, 1998); State v. Talmadge G. Wilbanks, No. 02C01-9601-CR-00003 (Tenn. Crim. App. at Jackson, Nov. 19, 1996).

While the appellant's background history is in many respects positive, we conclude that the circumstances of this offense and his history of drug use provide the necessary evidence to support the trial court's ruling. Specifically, the trial court noted that the facts of this offense supported the greater charge of aggravated robbery, a class B felony, which in itself would have precluded the appellant from consideration of any diversion program. We recognize that the trial court may look behind a plea agreement and consider the true nature of the offense committed. See State v. Hollingsworth, 647 S.W.2d 937, 939 (Tenn.1983); State v. Biggs, 769 S.W.2d 506, 507 (Tenn. Crim. App.1988). The offense also was committed to "feed [the appellant's] [drug] habit." Similarly, the trial court considered the appellant's admitted eighty to one hundred dollar a day drug habit. Clearly, the court was concerned with the appellant's history of drug use and, apparently, with his other instances of criminal behavior. See, e.g., State v. Beverly, 894 S.W.2d 292, 293 (Tenn. Crim. App. 1994). Moreover, while the court failed to specifically enumerate factors favoring diversion in its findings, the record reflects that the court considered the appellant's age, his employment status, his military service, and the appellant's

6

desire to obtain a real estate license. We also note that the trial court was in a position to judge the appellant's credibility based upon his appearance and demeanor while testifying. Indeed, the trial court's findings indicate that the appellant was untruthful, or at least, lacked candor, with the court. This factor alone may be sufficient to deny diversion. State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App.1992). Accordingly, we conclude that the trial court did not abuse its discretion in refusing to grant the appellant judicial diversion. This issue is without merit.

The judgment of the trial court is affirmed.

_____
DAVID G. HAYES, Judge

CONCUR:

_____
JOE G. RILEY, Judge

_____
JOHN EVERETT WILLIAMS, Judge