IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

## STATE OF TENNESSEE v. BRAGG LAMPKIN

**Appeal from the Criminal Court for Shelby County**
No. 18-06607          Chris Craft, Judge

_____

### No. W2019-00885-CCA-R3-CD

_____

The Defendant entered a guilty plea to one count of sexual exploitation of a minor via electronic means pursuant to pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), with the sentence to be determined by the trial court. The trial court denied the Defendant's request for judicial diversion and sentenced him to four years of supervised probation with thirty days to be served in confinement. On appeal, the Defendant asserts that the trial court erred in denying diversion because it considered an irrelevant factor and because its factual findings were against the weight of the evidence. He also argues he was entitled to full probation. After a thorough review of the record, we affirm the trial court's sentencing decisions and remand for correction of the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;
Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Bragg Lampkin.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

The Defendant, a middle school teacher and coach, was charged with two counts of sexual exploitation of a minor by electronic means for crimes against two students which included masturbating in front of the victim on appeal. The Defendant was charged with "intentionally engag[ing] in sexual activity for the purpose of having [the victim], a minor, view the sexual activity" in count one and with unlawfully and intentionally "display[ing] material containing sexual activity to [the second victim], a minor," for the purpose of the Defendant's sexual arousal or gratification in count two. *See* T.C.A. § 39-13-529(b)(1), (b)(2). At the hearing in which the trial court accepted the guilty plea and imposed a sentence, the State announced that the victim in the second count did not wish to proceed with the prosecution, and the Defendant entered a best-interest guilty plea on the first count.

In her summary of the factual basis for the plea, the prosecutor stated that on February 13, 2018, law enforcement received a report alleging inappropriate behavior by the Defendant. An investigation revealed behavior in addition to that which formed the basis of the single charge to which he was pleading guilty. Several students had complained that the Defendant had made inappropriate comments, including telling the male athletes "not to wear underwear so the girls could see what they were working with." A female student had spoken with police about inappropriate behavior she witnessed between the Defendant and male students, and a male student had told police that the Defendant had shown him a video of the Defendant and an adult woman having sex.

During the investigation, the victim in count one recounted to police that the Defendant had shown him pornography on the Defendant's telephone using an application called "Keepsafe." In November 2017, the Defendant had induced the victim to come to the classroom during a free period and to masturbate while watching pornography. The victim told police that the Defendant took a picture of the victim's penis during this incident. On a second occasion, the Defendant again asked the victim to come to the Defendant's classroom, and the Defendant masturbated and ejaculated in front of the victim. The victim told police about two other students he believed had been subjected to similar behavior from the Defendant.

The trial court reviewed the rights the Defendant was waiving in entering a guilty plea. The court also informed the Defendant of the potential range of punishment for a Class E felony. The Defendant stated that he wished to enter a plea pursuant to *Alford*,

and the trial court accepted the guilty plea and proceeded to accept proof relevant to punishment.

The victim's father read a letter in which he described the effects of the Defendant's conduct on the victim. The victim was in therapy and had suffered social repercussions from coming forward. The victim's father noted that the Defendant had taken nude pictures of the victim and had introduced him to pornography, and these actions had occurred at school while the victim stayed late for track practice. The victim's father asserted that the school's principal had told him there were twenty other students involved, and the victim's father stated that it was unfortunate that the victim in count one was alone in bearing the burden of pursuing the prosecution. The victim's father requested that the offense "stay on [the Defendant's] record for the rest of his life."

The Defendant testified that at the time of the offense, he was teaching seventh and eighth grade science to children ages twelve to fourteen and that sexual education was part of the curriculum. He essentially denied the offense and cast any error in his behavior as an attempt to relate to the children "on their level" by being informal and using "everyday vernacular." The Defendant stated that he did "regret pretty much having blurred lines, maybe doing things in the hopes of helping the kids and aiding the kids in learning that may have seemed controversial, may have seemed too friendly towards the kids." He specifically denied telling the male athletes not to wear underwear, making sex jokes to the children, talking about pornography, or providing the password for his "Keepsafe" account. He agreed with the prosecutor's suggestion that he was asserting that "every single one of these children who came forward and talked about either what [he] had done to them personally or what they witnessed [him] doing to other students, they're all lying." He also stated that many of the students were specifically asked to fill out a report about him and that the allegations in these reports were not consistent with one another. Regarding an evaluation that was part of the presentence report, the Defendant agreed that he did not mention to the evaluator that he was accused of masturbating in front of a student.

The Defendant stated that he was "done with education," had no current contact with children, and would refrain from social media. He was currently working as a shipping and receiving clerk and needed access to the internet for work. He agreed that regardless of his intent, he would be eligible to teach if his record were expunged pursuant to judicial diversion.

The defense argued that it was difficult for teachers to navigate between developing close relationships with students and maintaining professionalism. The trial court, in imposing the sentence, quoted a biblical passage stating that teachers should be

judged with greater strictness, stated that it was not using religious law to rule on the case, and concluded that teachers should nevertheless be held to a high standard.

The trial court then reviewed the factors affecting its decision regarding diversion. The trial court found that "there's nothing in the record that shows [the Defendant is] not amenable to correction." However, the court found that the circumstances of the offense were aggravated in that, although the Defendant was pleading guilty to a single count, the stipulated facts and presentence report indicated that there were twenty students who had complained of the Defendant's behavior. The trial court found that the Defendant had no prior criminal record, good social history, and good mental and physical health. The trial court noted that there had been some publicity and that accordingly, deterrence was "somewhat" of a consideration. Diversion was in the Defendant's best interest.

The trial court stated that it placed the greatest weight on the interests of the public. In particular, it noted that the Defendant had violated a public trust and that nothing would stop him from returning to teaching at any time, either in Tennessee or elsewhere, if he were granted diversion. The court found that "there's some danger that 30 or 40 years from now he might be a teacher again" and that "the public has a great interest in making sure that he never ever is placed in authority over children again." The trial judge concluded by referencing his previous experience as a prosecutor and judge and stating that he had witnessed numerous sexual offenders attempting to return to work around children. The court concluded, "And the public has just a huge interest in making sure that [the Defendant] never ever is around children in a position of authority where he can mentor them or have anything to do with their following his orders."

The trial court particularly asserted that it was not denying diversion because of the Defendant's failure to admit guilt but observed, "I think he's guilty as can be. And that he probably committed perjury on the stand when he said none of this ever happened." The trial court denied diversion.

The trial court went on to consider enhancing and mitigating factors, according slight weight to prior marijuana use and to the fact that there were multiple victims and significant weight to the fact that the Defendant abused a position of trust to perpetrate the offense and that the offense was committed at school. T.C.A. § 40-35-114(1), (3), (14), (15). The court gave slight weight to the mitigating factor that the Defendant's conduct did not cause or threaten serious bodily injury. T.C.A. § 40-35-113(1).

In determining whether to impose an alternative sentence, the trial court found that society had an interest in being protected from future criminal conduct by the Defendant and that full probation might depreciate the seriousness of the Defendant's offense. The court found that the circumstances of the offense were aggravated because the Defendant

was in a position of trust and because there were multiple victims. The trial court noted that it was "not sure that he understands that what he did was a crime."

The trial court sentenced the Defendant to eighteen months but suspended the sentence to four years of probation with periodic confinement of thirty days to be served to accommodate the Defendant's work schedule. He was ordered to register as a sex offender, to refrain from contact with children, and to refrain from accessing internet pornography. After the imposition of the judgment, defense counsel sought to clarify whether the Defendant could use the internet at his work, and the trial court stated that the Defendant could use the internet as it related to his job but should stay away from any sites involving pornography or children. It referred to an unrelated case in which a sexual offender had possessed videos of the television show *Leave It to Beaver* to illustrate that the Defendant "just needs to stay away from things about children."

The Defendant appeals the denial of diversion and full probation.

## ANALYSIS

### I. Diversion

The Defendant asserts that the trial court abused its discretion in denying diversion by relying on an irrelevant factor. Judicial diversion is a "legislative largess" granted to certain qualified defendants whereby the judgment of guilt is deferred and the defendant is placed on probation. *State v. King*, 432 S.W.3d 316, 323 (Tenn. 2014); *see* T.C.A. § 40-35-313(a)(1)(A). If the defendant is successful in completing the probation assigned as part of diversion, the charges will be dismissed and the defendant may seek expungement. T.C.A. § 40-35-313(a)(2), (b). Upon successful completion, the defendant will be restored "'to the status the person occupied before such arrest or indictment or information.'" *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015) (quoting T.C.A. § 40-35-313(b)). Violation of the probation imposed as a condition of diversion may result in an adjudication of guilt and imposition of a sentence. T.C.A. § 40-35-313(a)(2); *Dycus*, 456 S.W.3d at 925. The statute defines which defendants are qualified to apply for diversion, and the parties here do not dispute that the Defendant was a qualified to be considered for diversion. *See* T.C.A. § 40-35-313(a)(1)(B)(i), (ii). However, "[t]here is no presumption that a defendant is a favorable candidate for judicial diversion." *Dycus*, 456 S.W.3d at 929.

Like other sentencing decisions, the decision to grant or deny diversion is reviewed for an abuse of discretion. *King*, 432 S.W.3d at 324-25. "Reviewing courts will find an abuse of discretion only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of

the evidence, or employed reasoning that causes an injustice to the complaining party." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). Although the deferential standard of review articulated in *State v. Bise*, 360 S.W.3d 682 (Tenn. 2012) applies to the decision to grant or deny diversion, the common law factors which the trial court has long been required to consider in its decision have not been abrogated. *King*, 432 S.W.3d at 326. Accordingly, in determining whether judicial diversion is appropriate, a trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice—the interests of the public as well as the accused.

*State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996) (footnote omitted). In addition to considering these factors, the trial court must weigh them against one another and explain its ruling on the record. *King*, 432 S.W.3d at 326 (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)).

If the trial court has adhered to these requirements, the reviewing court merely looks to see whether "any substantial evidence" exists in the record to support the trial court's decision. *Id.* "Under the *Bise* standard of review, when the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this court must apply a presumption of reasonableness and uphold the trial court's decision so long as there is any substantial evidence to support the decision. *Id.* at 327. The trial court need not "recite" all of the factors, but the record must reflect that it considered each factor, identified the specific factors applicable to the case, and addressed the relevant factors. *Id.*

Here, the Defendant does not dispute that the trial court considered and weighed all of the required factors in rendering its decision. Instead, the Defendant argues that the trial court abused its discretion by relying on an irrelevant factor, the Defendant's profession, in denying diversion. In support of this argument, the Defendant notes that the trial court observed that teachers should be judged more strictly and that the trial court stated that it was denying diversion in part because granting the Defendant diversion would result in rendering him capable of working with children again.

Reliance on an irrelevant factor in denying diversion may constitute an abuse of discretion. Because judicial and pretrial diversion are granted or denied based on the

same relevant factors, both are subject to the same constraint: that the trial court must consider the appropriate factors. *Id.* (citing *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992)). The "obvious corollary" to the requirement that relevant factors be considered is the requirement that irrelevant factors must not form the basis of a decision regarding diversion. *State v. McKim*, 215 S.W.3d 781, 787 (Tenn. 2007). Merely considering an irrelevant factor will not warrant a finding of abuse of discretion; "it is the *undue* consideration of an irrelevant factor that is prohibited." *Stanton v. State*, 395 S.W.3d 676, 687 n.2 & 691 (Tenn. 2013) (concluding that consideration of legislation which was proposed but not passed was not relevant but that the evidence was not given undue consideration in denying pretrial diversion).

We conclude that consideration of the profession in which the Defendant was engaged at the time of the crimes did not constitute reliance on an irrelevant factor. The fact that the Defendant was a teacher was relevant to several factors which the trial court was required to consider. The Defendant's position as a teacher and a coach were relevant to the circumstances of the crime, which was committed against one of his students on school grounds. *See State v. William Blaine Campbell*, No. E1999-02208-CCA-R3-CD, 2000 WL 1449875, at *3 (Tenn. Crim. App. Sept. 29, 2000) (concluding that the trial court properly considered that the defendant had abused his position of trust as a teacher in furnishing alcohol to a minor). The Defendant's work also constituted part of his social history, in that his employment and his education demonstrated that he had both the qualifications and the desire to work with children. The trial court primarily considered this fact as it related to the interests of the public. In particular, the trial court noted that granting diversion could erase any public record of wrongdoing. *See* T.C.A. § 40-35-313(b). The trial court found that the interests of the public weighed heavily in favor of making it impossible for the Defendant to return to teaching, a profession for which he had attended higher education and in which he was engaged at the time of the offenses. We conclude that considering the Defendant's profession did not constitute reliance on an irrelevant factor. *State v. Bobby R. Baggett*, No. M2007-00985-CCA-R9-CO, 2008 WL 2648921, at *4 (Tenn. Crim. App. July 2, 2008) (the defendant's profession as a teacher was properly considered by the prosecutor in denying pretrial diversion because it was relevant to his amenability to correction and the interest of the public in preventing crimes against children); *State v. Houston*, 900 S.W.2d 712, 715 (Tenn. Crim. App. 1995) (concluding that the defendant's profession as a police officer was properly considered in denying pretrial diversion because "[t]he fact that the appellant violated a position of public trust bears directly on the public interest."). We note that although the Defendant quotes significant portions of the transcript in the section of his brief which argues the trial court relied on an irrelevant factor, he does not allege with particularity that the trial court erred in relying on any other irrelevant factor.

The Defendant also appears to challenge the factual findings and credibility determinations of the trial court. He asserts that his intention never to work with children again was undisputed and that the court could not accordingly base its decision on its determination that he should not be able to work with children in the future. However, a trial court's findings of fact and credibility determinations at sentencing are generally binding on this court. *Parker*, 932 S.W.2d at 956; *see also King*, 432 S.W.3d at 326 (when the trial court has considered the proper factors, this court reviews to determine whether "any substantial evidence" exists in the record to support the trial court's decision).

The Defendant argues that the trial court's credibility determinations were tainted by "bias against sexual offenders" and cites to the court's reference to sexual offenders returning to work around children and to remarks made after the sentence was imposed regarding an unrelated case in which a sexual offender possessed videos of a television show. The Defendant never moved for the trial court's recusal, and he includes no legal citations pertinent to his assertion of bias. In any event, the trial court's decision did not hinge on a credibility determination or specifically discredit the Defendant's assertion that he did not currently intend to return to teaching, although the court discredited the Defendant's denial of the offense. Instead, the trial court noted that "there's some danger that 30 or 40 years from now he might be a teacher again." The denial of diversion was based on the trial court's determination that the interests of the public weighed in favor of making it impossible for the Defendant to return to teaching, regardless of his current intentions. We conclude that this did not constitute an abuse of discretion.

## II. Alternative Sentence

The Defendant argues that he was "denied both a diversion and alternative sentencing" and that these decisions were in error because they were made contrary to the weight of the evidence, based on facts outside the record, and decided as a result of bias. The State's response is that the Defendant did receive an alternative sentence and therefore cannot assert error. We give a broader reading to the Defendant's argument, which consists of three sentences and cites *State v. Beverly*, 894 S.W.2d 292, 294 (Tenn. Crim. App. 1994) (conducting a de novo review and granting full probation), and we conclude he is asserting that the trial court erred by ordering thirty days of incarceration in addition to probation.

A trial court's sentencing decisions are generally reviewed for abuse of discretion, with a presumption of reasonableness granted to within-range sentences that reflect a proper application of the purposes and principles of sentencing. *Bise*, 380 S.W.3d at 707. This court also reviews the denial of an alternative sentence which falls within the appropriate range and reflects that the decision was based on the purposes and principles

of sentencing under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the party complaining. *State v. Herron*, 461 S.W.3d 890, 904 (Tenn. 2015). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sentencing Comm'n Cmt. Likewise, the defendant bears the burden of establishing that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). In determining whether incarceration is an appropriate sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1). "The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5).

The Defendant's sole citation relevant to this issue is to *State v. Beverly*, where the appellate court conducted a de novo review and determined that the defendant was entitled to full probation because deterrence alone did not support the sentence of incarceration. 894 S.W.2d at 294. We observe that *Beverly* was decided prior to *Bise* and *Caudle* and applied a different standard of review. *Id.* Insofar as the Defendant is suggesting that this court reweigh the evidence, we review the denial of full probation for abuse of discretion. *State v. Sihapanya*, 516 S.W.3d 473, 475 (Tenn. 2014) ("The abuse of discretion standard does not permit an appellate court to substitute its judgment for that of the trial court.") (order) (per curiam). Here, the trial court determined that the nature of the offense was aggravated because of the circumstances in which it was committed, including the fact that the Defendant used his position of trust and the fact that there were other victims who did not wish to pursue prosecution. During the hearing, the trial court noted the need for deterrence. The trial court stated that full probation would depreciate

the seriousness of the crime. Furthermore, the trial court found that the Defendant was untruthful when he denied the offenses, and a court determining whether to grant probation "may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation." *State v. Sharp*, 327 S.W.3d 704, 716 (Tenn. Crim. App. 2010); *see State v. Arbra Allen Sims III*, No. M2018-01296-CCA-R3-CD, 2019 WL 1388202, at \*5 (Tenn. Crim. App. Mar. 27, 2019). We discern no application of an incorrect legal standard, no illogical conclusion, no clearly erroneous assessment of the evidence, and no reasoning that causes an injustice to the party complaining. *See Id.* at 476 (upholding sentence of incarceration based on the circumstances of the offense, the need for deterrence, and the need to avoid depreciating the seriousness of the offense). Accordingly, we conclude there was no abuse of discretion.

While the Defendant asserts error based on reliance on "factors outside the record that demonstrate the court's bias," he does not state with any particularity what these factors were, and this issue is waived. Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). We agree with the State that although the heading in the Defendant's brief related to this issue asserts that his sentence was "excessive," he has also waived any claim regarding the length of his sentence for failure to present argument or cite legal authority on the issue. Tenn. Ct. Crim. App. R. 10(b).

### III. Correction of Judgment Form

The State notes in its brief that the record demonstrates some inconsistency regarding the Defendant's guilty plea. The indictment charged the Defendant, an adult, with "intentionally engag[ing] in sexual activity for the purpose of having [the victim], a minor, view the sexual activity." *See* T.C.A. § 39-13-529(b)(1). Accordingly, the indictment set out the elements of sexual exploitation of a minor by electronic means, and it likewise cited to the statute making that conduct a criminal offense. Sexual exploitation of a minor by electronic means under section 529(b)(1) is a Class E felony. T.C.A. § 39-13-529(e)(2) ("A violation of subsection (b) is a Class E felony; provided, that, if the minor is less than thirteen (13) years of age, the violation is a Class C felony."). At the plea hearing, the prosecutor submitted facts sufficient to support a conviction for that offense and stated that the Defendant was pleading guilty to a Class E felony. The Defendant was informed of the range of punishment he was subject to for a Class E felony and did not contest the State's statement of evidence. The judgment form imposed a sentence for a Class E felony, consistent with the sentencing hearing.

However, the judgment form, the cover page of the indictment naming the offenses, and the plea hearing reflect that the prosecution and the trial court referred to

the offense as "soliciting sexual exploitation of a minor by electronic means." As the State notes, the offense of solicitation of a person under eighteen years of age for the sexual exploitation of a minor by electronic means on the facts at issue would be a Class A misdemeanor. T.C.A. § 39-13-528(c) ("A violation of this section shall constitute an offense one (1) classification lower than the most serious crime solicited, unless the offense solicited was a Class E felony, in which case the offense shall be a Class A misdemeanor."). The elements of that offense are "to intentionally command, request, hire, persuade, invite or attempt to induce a person" under 18 "to engage in conduct that, if completed, would constitute a violation by the soliciting adult of one (1) or more of the following offenses," including sexual exploitation of a minor by electronic means. T.C.A. § 39-13-528(a)(9). These elements were not referenced in the indictment or elsewhere in the record. We observe that the statute under which the Defendant pled guilty, Tennessee Code Annotated section 39-13-529, was previously entitled "Solicitation of minor to observe sexual conduct." T.C.A. § 39-13-529 (2014).

The Defendant does not assert there is any error in the judgment, and there appears to be no disagreement about the elements of the underlying offense or the Class of the offense to which the Defendant pled guilty. *See State v. Chastity Coleman*, No. M2017-00264-CCA-R3-CD, 2018 WL 1684365, at *12 (Tenn. Crim. App. Apr. 6, 2018) (concluding that the prosecution's sentencing recommendation was binding because even though the agreement was ambiguous, the record demonstrated that this was the understanding of all the parties). We remand for correction of the judgment form.

## CONCLUSION

Based on the foregoing analysis, the judgment of the trial court is affirmed, and the case is remanded for correction of the judgment form.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE